Good morning, this case will now be distributed at 18-0269 F. Gary Kovac, plaintiff, judge, creditor, affidavit, B.B. Sagan, Kenneth L. Barron, Jr., deceased, W. Getter, and Senator L. Barron. Citation is following the code. Urgently on behalf of the responsible defendants, Ms. Ellen Rueben. Urgently on behalf of the plaintiff's affidavit, Mr. Packard and Griffin. Good morning, counsel. Good morning. Justice Hutchinson is the third member of our panel. She is unable to be here this morning, but certainly will listen to the argument by tape, so she regrets that at this time. Ms. Green, do you want to start? Good morning, may it please the court. My name is Ellen Green and I'm here today on behalf of the citation respondent appellant, Sandra Barron. The order we are appealing was entered in a section 2-1402 supplemental proceeding to enforce a judgment that was entered against a single defendant, the estate of Ken Barron. The trial court here held Sandra Barron, a citation respondent, personally liable for over $1.6 million to satisfy the judgment against the estate. There are two main reasons for the reversal. The first is that the trial court lacked authority to enter what's effectively a judgment against Sandra Barron when there was no showing that she possessed any of the assets of the judgment debtor. Part of that judgment against the estate, though, took into account the salary overpayments to your client, correct? Yes, Your Honor. Okay. Yes, that's correct. But the issue of Sandra's personal liability for those wage overpayments that you're referring to, that was based on the amount she was overpaid while working for a company called KES, which was already litigated. In 2008, in this case, that was 10 years ago, the trial court dismissed the claims against her with prejudice, and this court, in its prior opinion, affirmed the dismissal in 2014. Now, was the constructive trust that the trial court imposed against the estate also imposed against her personally because of this overpayment? No, Your Honor, it was not. The constructive trust was for a single amount, $3.2 million. It was on count five of the third amended complaint that was issued years ago. It was directed solely against Ken Barron. In that count, there were no allegations of misconduct against Sandra Barron. It was based on his fraud and breach of fiduciary duty in overpaying himself and Sandra while she worked for KES. And it wasn't itemized in any way. It didn't impose a constructive trust on Sandra personally. She wasn't a judge liable for anything. And no damages were attributed to Sandra. She wasn't even a defendant at the time that that was entered. Were there other actions against your client personally that are either dismissed or still pending that sought a constructive trust against her? In this action, the counts were conversion and conspiracy. They sought damages and other relief. In that case, I don't think they sought a constructive trust. But weren't there other cases? Yes, there was also another case filed in 2009. It was brought on behalf of the operating companies, which Ken Barron and Gary Kovach, the plaintiff in this case, were 50% owners. The judge in that court considered Kovach to be the real party in interest. He was just bringing in another case individually against Sandra Barron. My question is very specific. And that is whether it's the 2009 L case, the 2012 Chancery case, the 2012 probate case, the 2014 fraudulent transfer complaint. Some of those did, in fact, seek a constructive trust against your client, correct? But it hasn't been entered yet or was never entered? Yeah, it was never entered. He had the opportunity to bring this years ago. These were payments going back, in some instances, to 1999. But in order to have a constructive trust, you have to have a specific identifiable fund. And you have to have some sort of bad conduct on the part of the party on which you're seeking to impose a constructive trust. In this case, on the conversion count, this is when the court affirmed the dismissal of this count in 2014, I quote, the amounts allegedly due Kovach from the overpayment of compensation to Sandra accrued over several years and were not specific and identifiable as funds belonging to Kovach. So what is needed for the imposition of a constructive trust is that identifiable fund that's traceable to some bad conduct. But now it's not the case in this case that there was no wrongful conduct on Sandra's part as to her way to overpayments. That was the very basis for his claims that were brought against her and that were dismissed with prejudice. And he appealed these, and he lost on appeal. He also, that was the basis for his 2009 action against Sandra Barron, also brought in King County. That was dismissed with prejudice. The court also said that there was no specific identifiable funds in that case to support a conversion action. So it's either law of the case or res judicata because it was in another action. He had also brought in other asserted claims in the probate action based on the same wage overpayments. There was a separate action brought in Chancery. I'm losing track of 2012 on a fraudulent conveyance, also based on these same wage overpayments. It's been going on for 10 years. Now, the wage overpayments to her, were they ever held by the estate? I'm sorry, when you say held by the estate? The overpayments, were they ever part of the estate? I'm not sure. The estate is just whatever Ken Barron had at the time of his death. He died shortly before trial. Right. So the constructive trust was not imposed on the wage overpayments. It was for the amount of money that he chose. He had misappropriated from these companies, as the trial court found. And then it was his conduct in deciding what to do with those funds. He happened to overpay his wife. And she was also sued as a defendant. But there was no finding of wrongful conduct on her part. So there was never any judgment entered against her. She was never a judgment debtor, is that correct? She was never a judgment debtor. She was, in this case, only a citation respondent. And there were two citations issued against her. One is in her personal capacity, but also in her capacity as administrator of the estate of Ken Barron. So, you know, it's primary to see, you know, what assets the estate has that are available to satisfy the judgment. It's also proper to inquire if Sandra Barron, in her personal capacity, is holding assets of the estate, you know, that's in her possession, but that's their property. In this case, what is so wrong about what the trial court did is he recognized that those wouldn't be part of the assets, wouldn't be part of the estate because they were already paid to her, you know, going back, you know, 15 years ago. But it nevertheless said, oh, well, because that money went to you, I'm going to hold you personally liable for that amount. Even though there was no technical claim against her, this has already been litigated. He just sort of decided to reopen it and said, oh, you must have received it. But that was the whole basis for the litigation in the first place. And that ship has sailed. That was years ago. I was here five years ago in this courtroom, and I believe Justice Burke was here as well, on the conversion count and the conspiracy counts. And the dismissal with prejudice was upheld, and that should be binding on the trial court in the supplemental proceedings. And this was a different judge, so, you know, it was Judge Mueller in the original action, so that may explain, you know, that there was a change or not an understanding of what had happened previously. But if you look at the judgment order, there's nothing referencing Sandra Barron. There was also a subsequent order about seven days later that said, you know, clarifying that this is judgment. This constructive trust is against the estate. That's also in the record. And if Mr. Kovach had an issue at the time with the constructive trust only being imposed against the estate and not against Sandra Barron or not against, you know, this money that she had paid, which at the time wouldn't have been part of the estate because it had been paid to her over a course of years, the time for him to address that issue was before the first appeal. So, you know, if Judge Mueller in June 2012 entered this order, he had the opportunity then to correct it. But there was no, you know, it wouldn't have been proper anyway because there was no claims against her and there was, you know, he wasn't able to state a cause of action. For the conversion count, you know, it wasn't a specific identifiable fund. And then for the conspiracy count, it was determined that there was a principal agency relationship between her and her husband because she received these payments as an employee and he was her employer, so it was a principal agency relationship so they couldn't conspire with each other because if she had done anything, it would have been at the direction of her employer. That was also affirmed on appeal. So in addition to this amount of the wage overpayments, which amounted to about $800,000, and based on, they had their expert witness come back and offer an affidavit giving his opinion of what he thought Judge Mueller would have considered the portion of the judgment that would be attributable to her. If he wanted to do that, he would have done that in the June 2012 order, didn't need somebody to come back and say, oh, this part belongs to her. It doesn't belong to her. She wasn't a defendant at the time the judgment was entered. So you have this body of $800,000. In addition, in the supplemental proceeding, the judge also found Sandra Barron personally liable for over $300,000 in prejudgment interest. That would have included from the time that these wages were paid until the time of the 2012 judgment. And there was no debtor-creditor relationship between her and Gary Kovach. She was just an employee of this other company, KES. In addition, prejudgment interest can be imposed on the basis of equitable considerations if there's, again, some bad conduct on the part of the actor and she, again, was not liable for anything. And so the judge still, in the supplemental proceeding, gave her $300,000 of that and told her she had to pay that. And on top of that, the trial judge in the supplemental proceeding held her liable for over $500,000 in post-judgment interest on a judgment that's been accruing for six years. And she wouldn't even have been aware that she was responsible for paying that until March 2018, just a few months ago, where this trial judge says, Oh, you're liable for this $800,000, so you have to pay over $500,000 in post-judgment interest on top of that. So at the very least, if this order, in the context of a motion for turnover of her own assets, not the assets of the judgment debtor, if that's recognized as a constructive trust, at the very least, that $500,000 should not be her responsibility. None of this should be her responsibility. Is pre-judgment and post-judgment interest meant as some form of punishment for bad conduct? No. Post-judgment interest is purely statutory, and it's to be imposed, I believe it's mandatory, but it's on the judgment. It's on the judgment recovered, not on the judgment that Kovach wishes he would have recovered or should have recovered against Sandra Barron if he had claims against her. It's purely statutory. They haven't come up with any authority, case authority or statutory authority, to require a citation respondent to pay a portion of somebody else's post-judgment interest. The same with pre-judgment interest. It would be one thing if she's, you know, a bank, is holding, you know, has money in an account, and, you know, they also have to turn over the part of the pre-judgment interest that the judgment debtor owed. But this isn't the case. They're not asking for, you know, saying that she was holding his assets. They want to hold her personally liable for that, as though she had a debt, you know, in 2004 when she was overpaid that she owed to him, but it was a debtor-creditor, and it also cannot be based on wrongful conduct, as the law of the case. I know your argument that the constructive trust was not imposed on the wage overpayments but was imposed on the estate. But let's just assume for a second that the constructive trust was imposed on the wage overpayments. Then, not talking about pre-judgment interest now, I'm talking about simply the post-judgment interest, wouldn't it be appropriate if, in fact, she was holding this after judgment in constructive trust? Yes, under that DiMinci case, you can impose constructive trust for equitable consideration. In that case, it was, you know, again, a constructive trust because somebody was holding specific identifiable funds. It was a check somebody received, you know, that was misdirected. This guy cashed it or took it, and it was asked that he return the money. He refused to do so. That's a specific identifiable fund where there was a constructive trust. For equitable reasons, they imposed pre-judgment interest on this defendant. And again, I stress that that was a defendant, not a citation respondent. You know, there is an equitable reason for doing so. But not based on, oh, I should have won this case years ago, so I want to collect my money now. This has been settled. And, you know, every time we get some kind of new venue or new judge, this issue comes up again with the wage overpayments. But we would ask that this court settle this dispute with respect to these wage overpayments that was settled in 2008, over 10 years ago now when it was dismissed with prejudice, and again on appeal 2014, which is now four years ago, and reverse the order that was entered holding Ms. Barron personally liable for somebody else's judgment and personally liable for somebody else's pre-judgment interest and post-judgment interest. Thank you. You'll have time after that. All right. Thank you. Mr. Griffin. Thank you. Good morning. May it please the Court. Patrick Griffin on behalf of Plaintiff at Appleby, Gary Kovach. Today Mr. Kovach seeks this court's affirmance of the trial course, March 29, 2018 order, which granted his motion for turnover and to compel Sandra Barron's participation in the underlying citation proceedings, which also ordered Sandra Barron to answer proper questions regarding the nature, value, and extent of her assets and which precluded the improper transfer of those assets, among other relief. You may have noticed that we've gone to some degree of length in our briefs underlying and in this court to focus on the limited scope of our request and of this appeal. As the Court is well aware, this case has a very long record and voluminous record dating back to 2007, a record that at times... The limited scope is limited to a 1402 citation proceeding, correct? I mean, that's what we're talking about here, not the judgment and all that. This is the citation proceeding, correct? It's the citation proceeding, Your Honor, but the citation proceeding obviously is based on an existing judgment and really that's the heart of the question. And the judgment really revolves around the constructive trust, correct? It does. Now, your argument and the trial court seem to agree with you was that the constructive trust was imposed on this wage overpayment money wherever it may be found. Correct, and I think based on the allegations in Count 5 and this Court's assessment of those facts and evidence at trial indicate that the totality of the judgment of $3 million and change was a total of the overpayments to both Ken Barron and Sandra Barron. Were the overpayments of the salary to Mrs. Barron ever part of Mr. Barron's estate? So the answer to that question, if you're talking about just the overpayments to Sandra Barron, the answer is clearly no unless, after getting those funds, she commingled them. We don't know the answer to that question with any degree of certainty because, unfortunately, in the underlying citation proceedings, Mrs. Barron has taken the position that she needs not answer any questions at all regarding her assets. So that's one of the reasons we're here. And if you were able to read the transcripts, we would really not be able to get her to answer any questions other than essentially her name. And that's one of the reasons we're here, not just for the emotion to compel the turnover, but for her meaningful participation in the citation proceedings. Because their position is really quite simple. They've been very candid from the beginning, as I would be in their position representing who I would be as a judgment debtor. Their position is that any asset that was jointly held between the two of them or that was only held by Ken Barron is no longer reachable by anybody. In other words, if it was in Ken Barron's name, then upon his death it either became part of his estate, which was a very tiny fraction of what he owned, or if it was part of the $8 million-plus that was jointly owned by them, it was never part of the estate either because by virtue of his death, jointly owned property goes to Sandra Barron. So their position is if Sandra Barron never owned it individually, it can't be reached. Not only can it not be reached, but we're not even allowed to ask questions about that. Their position is based upon, at least in part, on the June 12th clarification order, June 12th, 12th, clarification order of the original order imposing a constructive trust that says to clarify that when we refer to a constructive trust, it refers to the estate of Ken Barron. It doesn't talk about this money, wherever it can be found. It doesn't talk about all the, wherever the judgment, wherever the money that formed the basis of the judgment could be found. It just talks about for a constructive trust to be imposed, and you have to ask for it, the judge has to, or the judge could do it satisfactorily, I suppose, as an equitable measure, but the judge has to actually impose the constructive trust, correct? I agree, and I totally agree. And what happened here, unfortunately, I think inartfully, the trial court in quote-unquote clarifying the order, there was really no need to impose a constructive trust on the estate. The estate was the replacement defendant. It was a defendant in the underlying action. Why they did that, I'm not quite sure. One explanation could have been that the court was thinking, well, as to the overpayments to Ken Barron, we're going to now impose a constructive trust on the estate. I don't think that quite makes sense, but I understand why they might have thought that. But as to the overpayments to Sandra Barron, there was no need to impose a constructive trust on anything because she still held the assets. Now, in my view, and as I've argued in the underlying motion and in my briefs, because a constructive trust is not a cause of action but rather a remedy, it would have been improper to have a count for that specific purpose. And we haven't waived it. You can't waive a constructive trust merely by virtue of not asking for it at the trial court level. In fact, and you look at some of these cases, a constructive trust can be imposed in any circumstance where the facts are present which justify a constructive trust. In this particular case, we have, and your own decision in Code Act I was very instructive on this. Your decision reviewed the underlying factual allegations of Count 5, which was for fraud and breach of fiduciary duty, and the entire allegations in that count dealt with only two things, overpayments to Ken Barron and overpayments to Sandra Barron. And if you total the overpayments, it equals the amount of the judgment. It's not just for Ken Barron, it's for the both of them. So who is the judgment debtor here? Don't we have to have a judgment debtor first? I think by virtue of the constructive trust doctrine, which we've asked the trial court to impose and in fact has imposed, she becomes an additional judgment debtor. I don't think there's any question about that. She becomes an individual, I'm asking, not in her capacity as administrator of the estate. In her individual capacity, having received these payments unjustly, she becomes the constructive trustee of those funds, and by virtue of the citation proceedings, the 1401 proceedings, she becomes a judgment debtor for purposes of the statute. And if you read the purpose of the statute, it's very broad. It's to remedy judgment creditors' rights, and we cited that in our case. Even in this court's decision, in paragraph 69, when I'm talking about the COVAC 1 decision, it clearly recites the Count 5 overpayments to both Ken Barron and Sandra Barron, and in response to the question where it says, Sandra next contends that the trial court erred in imposing a constructive trust as part of the judgment on Count 5 for fraud. We disagree. And you went on to say that the imposition of the constructive trust was appropriate for the breach of fiduciary duty here to prevent unjust enrichment to the estate. Now, those three words, to the estate, have sort of garnered some significance in this case because the appellant would have an overall preclusive effect on any other judgment against anybody. I don't think, reading the court's decision, that that can be sustained, and I don't think, reading the facts and the evidence that was used at trial, that that can be sustained because the constructive trust is appropriate in many circumstances. The court cited some of them. In fact, you cited the Forkin v. Cole case where you have a director shareholder who's improperly taking funds from the company. That's a perfect example of a constructive trust. Aren't you asking to impose a constructive trust on her individually without ever going through the process of the elements of a constructive trust, identifying the specific assets? I mean, that's some of the reasons why some of these counts were dismissed, and we upheld the dismissal because it wasn't specific and identifiable. Now we're talking about imposing constructive trust without ever going through that analysis. I think we have gone through the analysis, and here's why. And Your Honor correctly points out that the specific claims of conversion and conspiracy were dismissed because the plaintiff at that time had not met the burden of those elements. Why wasn't there an unjust enrichment count against her? Because there is no such thing in Illinois, believe it or not, as a count for unjust enrichment. It's similar to piercing the corporate veil. It's not a cause of action. It's a remedy. And case after case after case that the court reads is you're not allowed to say, Count 1, although we do see it from time to time, Count 1 can't be constructive trust. Count 1 can't be piercing the corporate veil. That has to be a request that's made at some point, sometimes at the trial level, sometimes in post-judgment proceedings, that based on evidence that we now have, we're going to impose this remedy of, for instance, piercing the corporate veil or, in this case, imposing a constructive trust because the facts justify it. So while you're correct, the elements were not alleged, as they shouldn't have been at the trial court level, we've certainly established them on appeal. It should be in the post-judgment collection proceedings, and I think Judge Ackerman recognized that. Number one, way back in September of 2016, when he first granted the motion but then realized there was a mathematical mistake in the motion, he specifically required two things in order to proceed. Number one, he wanted us to identify the funds because that's a requirement under the constructive trust, and number two, he wanted us to calculate them and identify her property. We did that. Pursuant to that instruction from Judge Ackerman, we went out and we had the same expert who testified at trial specifically identify the funds with detail, not the ones to Ken Barron. By the way, the rest of this case that deals with the rest of the judgment, which is substantial, is not at issue today. The only thing that's at issue today are the overpayments to Sandra Barron. That's what he detailed in his affidavit to the court. The second part of that instruction to us was to now also identify Ms. Barron's judgment amount properly, the constructive trust judgment amount, then you can get her property. It seems like a backdoor way to get a judgment against her for that exact amount, but all the counts against her have either been dismissed or remained pending. It's a strange procedural predicament that plaintiffs are in. I would only say that I think the cases are pretty clear that you can't have, for the wrongdoing that was testified to at trial and proven, there is a remedy, and that remedy is by virtue of a constructive trust. There are many cases where constructive trust were imposed even without bad conduct. I think there's the Blumenthal case that we cited. After many, many, many years of really no misconduct at all, they imposed a constructive trust. In this case, we have clear evidence of misconduct on the part of both Mr. and Mrs. Barron, clear evidence that those payments were made to her. We can identify them to the penny, and all we've asked to do at the trial court level is identify what assets she still has to satisfy that constructive trust. If she is, your argument is that she at this point in the citation proceedings should be seen as a judgment debtor. Let's just assume for a minute that she's not a judgment debtor in this case for citation purposes. I mean, you would agree that you're looking at her as a third party, and then you have to identify assets of the judgment debtor that she's holding, the judgment debtor being the estate of Ken Barrett. Would you agree with that? I would agree with that to this extent. We have to be able to ask her questions to identify where those assets that she wrongfully received went. Is that part of this appeal, though? I mean, there's a judgment that was entered against her specifically for a certain amount of money. She appealed. You didn't cross it. I think your question, though, that you asked me specifically as to her not being a judgment debtor. And so what I'm trying to say is if she's not a judgment debtor for the purposes of your question, I think we still have to be able to ask questions then about whether the assets that she did receive stayed with her, went to Ken Barrett, went to the estate. Because, you know, if you just read the black and white of the order, there's a constructive trust against the estate. We have to be able to ask those questions. But you fully litigated that issue in the trial court. Because, I mean, you asked those questions. She refused to answer. You got your judgment anyway from Judge Ackerman. So, I mean, if in fact we were to reverse that judgment, I mean, and it goes back to what the citation proceeds, wouldn't you then be able to actively pursue that line of questioning by asking the court to rule on those issues? If your Honor had a lot of time to look through the underlying record, you will see that in the last four years the parties have gone around and around and around on that very question. And without some guidance by this court to say either there is or is not a constructive trust, that's a difficult question to answer. We've alleged that regardless of whether you treat her as a judgment debtor, we think she should be because she's the constructive trustee of these funds, that she should have to answer meaningful questions about those assets that she received, where they went since she received them, so that we can properly determine whether she has assets of the estate. We know she has her own assets. The next question would be, we think that's the perfect question, but we should also be able to understand whether she has assets of the estate if, as your Honor posed the question, she's not technically a judgment debtor. We believe that she is. I do have one other question about this June 12 order. You mentioned that you didn't really know why Judge Mueller entered that order and you gave a possible reason for it. There's another possible reason that the judge realized that the counts against the appellant in this case had been dismissed and was limiting the scope of this constructive trust so as to exclude her and only include the estate of Ken Mary because of the dismissal of those counts. Having reviewed the entirety of the record and having reviewed Judge Mueller's prior rulings, prior to trial and post-trial, I would be extremely surprised if he was trying to limit the scope of the judgment. His writings indicate that he felt both Mr. and Mrs. Barron were not trustworthy people. At trial, he found both of their testimony. Obviously, Mr. Barron was deceased at the time, but he found virtually all of her testimony not credible. I can't say exactly why he used that language there. I think it was perhaps an artful or maybe a bit sloppy, but regardless of the language that he used, I'm not saying the language is not important. I think what's most important is, and I think this court applied it properly in COVAC 1 when it looked at the constructive trust and when it responded to Sandra Barron's argument that there should be no constructive trust, period. That was their argument at trial and that was their argument on appeal in COVAC 1. This court correctly determined that no, when you have the misconduct that has been alleged and proven in this case, it doesn't really matter whether the money was going to Ken Barron or it was going to Sandra Barron. A proper remedy, not a ruling on account that's been pledged because you can't do that with constructive trust, but a proper remedy is the constructive trust. And I don't think that your ruling in COVAC 1 can be reconciled with a parsing of those two sets of overpayments. There's either a constructive trust as to both or there's a constructive trust as to neither. The facts support the constructive trust as to both, and I think the case law that you cite in your own order, I think you cited in the Forkin v. Colt case, and the cases that we've cited several of that, indicate that same thing. Do you want to wrap up your time? I understand my time. I'll skip over some things. I might just indicate two things on the pre- and post-judgment interest. Clearly, the pre-judgment interest, there is both a statutory basis as well as an equitable basis to impose that. We specifically identified the amounts, and so whether it's a statutory or equitable basis, I think we have a basis to do both. And on the post-judgment interest, that's purely statutory, and I don't think there's any question about that. So, again, two simple questions. Is there an existing judgment and resulting constructive trust as to the overpayments to Sandra Barron? And number two, to the extent there is, does she have a requirement to meaningfully participate in the citation proceedings? We think the answer to both of those questions is yes. The trial court thought so as well, and we seek affirmation. I appreciate your time. Thank you. Ms. Green? Thank you. I would just like to point out that everything that counsel just argued, I feel like we could have been here five years ago and he would be arguing the same things about, you know, what was the constructive trust imposed on, what, you know, was the conduct of Sandra Barron that maybe would have required imposition of the trust, a constructive trust on her, or the credibility of her testimony. These are issues that have already been litigated, and those claims were already appealed and already decided by this court. And what plaintiff's trying to do is just, again, do what he couldn't do before, and that's trying to collect against Sandra personally for her past wage payments. In this case, he doesn't even have it in the context of a pleading. It's just, you know, you're a citation respondent. Let's see if we can just get your assets from you personally. But it's the same thing. He's been at this for 10 years, and if he wants to collect on his judgment, it's his burden to identify and trace the race, which in this case is the assets of the estate on which the constructive trust was imposed. Well, his position is that she isn't answering any of the questions, so we can't meaningfully do that. Well, this is just a distraction. All the difficulties that he's having in collecting his judgment, that's not the subject of the appeal. These are issues that can be addressed in the supplemental proceedings. And when he's saying that she was, you know, he was having difficulty having her answering questions, there are several court orders, and we point these out in our brief, that limited the scope of the examination to protect Ms. Barron from being harassed and making it very clear that he could only collect against the property of the estate and not against her personal assets. And that's why there was a lot of motion practice going back and forth. And then also, I just want to point out, he refers to this earlier order where there was a first turnover, first motion for turnover order that the trial court entered. It had an amount that was proposed by plaintiff that was actually the amount of prejudgment interest that was mentioned in this court's decision. They had used that number as the amount of the constructive trust that should be imposed against her. That order was vacated, and we believe that order was also incorrect because it was seeking to impose a constructive trust on her personally. But that was vacated. But now, what about his argument that she was effectively a judgment debtor because she held on to, or after his death certainly, certain assets went to her, let's say if they were held in joint tenancy, but those assets should have been in the estate. And these are unrelated to the wage overpayments, if we just talk generally. There is also, this was the subject of, they have also claims, this is also being litigated in the supplemental proceedings. They filed a complaint under the Uniform Fraudulent Transfer Act trying to flush out these issues as to whether funds that were part of the joint tenancy that transferred to her upon Ken Barron's death, what happened to these things and whether they can be used to satisfy the judgment. That's a separate issue. And that, I don't know if I have the, that was filed in 2014. That's still pending? That's still pending. I know the motion to dismiss was denied. Correct, and that was denied. Along those lines though, if in fact your client is holding assets of the estate, they are subject to turnover. If they're identifiable, that would be something that they will be determining in the supplemental proceedings, but that's not the subject of the appeal. We are just here on this narrow issue of did the trial court exceed his authority in finding Sandra Barron personally liable for the apportion of the judgment entered against the estate as well as personally liable for a portion of the prejudgment interest and post-judgment interest against the judgment debtor. As a matter of law, that was incorrect, and we'd ask that this court reverse the order and remand for further proceedings. Thank you very much. Thank you, counsel, for your arguments this morning. The court will take the matter under advisement and render a decision in due course. We stand in recess until the next case.